UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TANIA GALARZA,                                    :
                                                  :   Case No. 1:21-cv-06958 (WFK) (JRC)
                          Plaintiff,              :
                                                  :
            v.                                     :   JUDGE WILLIAM F. KUNTZ, II
                                                  :
SMILEDIRECTCLUB, LLC, HEALTHCARE                   :
FINANCE DIRECT, LLC, PERIODONTAL                   :
SPECIALISTS, INC., and ERIC GUIRGUIS,             :
D.D.S.,                                            :
                                                  :
                          Defendants.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


### DEFENDANTS' MEMORANDUM OF LAW
### IN SUPPORT OF
### MOTION TO COMPEL ARBITRATION
### AND DISMISS THE COMPLAINT


**Dated: May 11, 2022**

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

Edward C. Wipper (EW 6140)
17 State Street, Suite 4000
New York, New York 10004
T: (646) 593-7051
F: (646) 798-8902
E: ewipper@beneschlaw.com

Deana S. Stein (DS5047)
200 Public Square, Suite 2300
Cleveland, Ohio 44114
T: (216) 363-5170
F: (216) 363-4588
E: dstein@beneschlaw.com

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ i

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 2

      A.     The Parties. ..................................................................................................... 2

      B.     The SDC Registration Process Requires Consumers to Agree to the Informed Consent Containing a Valid Arbitration Provision. ............................... 2

      C.     Plaintiff Agreed to the Arbitration Agreement on Two Separate Occasions. ...................................................................................................... 5

      D.     The Dispute and Procedural History. ............................................................. 6

STANDARD OF REVIEW ................................................................................................ 7

ARGUMENT ..................................................................................................................... 8

I.       INTRODUCTION TO THE FAA. .............................................................................. 8

II.      PLAINTIFF EXPRESSLY AGREED TO ARBITRATE HER CLAIMS. ...................... 9

      A.     Plaintiff Agreed to Arbitrate. ....................................................................... 10

      B.     Plaintiff's Reaffirmation of the Arbitration Agreement Leaves No Doubt that This Action Must be Filed in AAA. .................................................. 12

      C.     The Arbitration Agreement Is Clear and Conspicuous and Judge Oetken Upheld a Nearly Identical Arbitration Agreement in *Sollinger*. ............................. 13

III.    THE ARBITRATOR SHOULD DECIDE ALL QUESTIONS OF ARBITRABILITY. ................................................................................................... 14

IV.    ALL OF PLAINTIFF'S CLAIMS ARE SUBJECT TO ARBITRATION. ...................... 16

V.     SHOULD THE COURT DECIDE AGAINST ARBITRATION, THE COMPLAINT SHOULD BE DISMISSED AGAINST HFD FOR FAILURE TO STATE A CLAIM. ................................................................................................... 17

      A.     Plaintiff Cannot Articulate a Cause of Action Under Either GBL §§ 349 or 350 Because There Are No Allegations of Consumer-Oriented Practices. ................................................................................................................... 18

B.     Plaintiff Fails to Identify a Contract With HFD or Plead a Breach Thereof. ........................................................................................................ 21

C.     Plaintiff Pleads No Facts Evincing Any Wrongdoing by HFD. ........................... 23

VI.     THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY. ........................... 24

CONCLUSION ........................................................................................................................ 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdallah v. LexisNexis Risk Sols. FL Inc.*,
    No. 19-CV-3609 (MKB), 2021 WL 6197060 (E.D.N.Y. Dec. 30, 2021) ..............................18

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
    672 F.3d 113 (2d Cir. 2011)........................................................................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................................................8, 23

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986).............................................................................................................9, 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................................................8

*Bell v. Cendant Corp.*,
    293 F.3d 563 (2d Cir. 2002)........................................................................................................9

*Bensadoun v. Jobe-Riat*,
    316 F.3d 171 (2d Cir. 2003)........................................................................................................7

*Berkson v. Gogo LLC*,
    97 F. Supp. 3d 359 (E.D.N.Y. 2015) .......................................................................................11

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
    No. 17-CV-04570(LAK)(KHP), 2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017) ...................13

*Billybey Marina Servs., LLC v. Affs. Afloat, Inc.*,
    No. 14-CV-6722 (SJ) (JO), 2016 WL 1266608 (E.D.N.Y. Mar. 11, 2016) .....................22, 23

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)........................................................................................................7

*Chanchani v. Salomon/Smith Barney, Inc.*,
    No. 99 Civ. 9219 RCC, 2001 WL 204214 (S.D.N.Y. Mar. 1, 2001) ......................................13

*Comfort Inn Oceanside v. Hertz Corp.*,
    No. 11-CV-1534 (JG)(JMA), 2011 WL 5238658 (E.D.N.Y. Nov. 1, 2011)....................22, 23

*Contec Corp. v. Remote Sol., Co.*,
    398 F.3d 205 (2d Cir. 2005)..................................................................................................9, 15

i

*Dunham v. Covidien, LP*,
  498 F. Supp. 3d 549 (S.D.N.Y. 2020) .................................................................21

*Electra v. 59 Murray Enters., Inc.*,
  987 F.3d 233 (2d Cir. 2021) .............................................................................18

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995) ........................................................................................10

*Fishberg v. State Farm Fire & Cas. Co.*,
  No. 20-CV-6664 (LJL), 2021 WL 3077478 (S.D.N.Y. July 20, 2021) .................20

*Fteja v. Facebook, Inc.*,
  841 F. Supp. 2d 829 (S.D.N.Y. 2012) ................................................................11

*FUJIFILM N. Am. Corp. v. Geleshmall Enters. LLC*,
  239 F. Supp. 3d 640 (E.D.N.Y. 2017) ...............................................................16

*Global Crossing Bandwidth, Inc. v. PNG Telecomms., Inc.*,
  No. 06-CV-6415T, 2007 WL 174094 (W.D.N.Y. Jan. 22, 2007) ..........................22

*Global Intellicom, Inc. v. Thomson Kernaghan & Co.*,
  No. 99 Civ. 342(DLC), 1999 WL 544708 (S.D.N.Y. July 27, 1999) ....................22

*Green Tree Fin. Corp. v. Randolph*,
  531 U.S. 79 (2000) ...........................................................................................9

*Guida v. Home Sav. of Am., Inc.*,
  793 F. Supp. 2d 611 (E.D.N.Y.2011) ................................................................24

*Harrington v. Atl. Sounding Co.*,
  602 F.3d 113 (2d Cir. 2010) .............................................................................10

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*,
  37 N.Y.3d 169 (2021) ......................................................................................18

*Hines v. Overstock.com, Inc.*,
  380 Fed. App'x 22 (2d Cir. 2010) .....................................................................10

*Jackson v. Rushmore Serv. Ctr., LLC*,
  No. 18-CV-4587(SJF)(AYS), 2019 WL 4736914 (E.D.N.Y. Sept. 27, 2019) .........6

*JLM Indus. v. Stolt-Nielsen SA*,
  387 F.3d 163 (2d Cir. 2004) ........................................................................16, 17

*JP Morgan Chase v. J.H. Elec. of New York, Inc.*,
  69 A.D.3d 802 (2d Dep't 2010) ........................................................................21

*Kai Peng v. Uber Techs., Inc.*,
    237 F. Supp. 3d 36 (E.D.N.Y. 2017) .................................................................10

*Kastner v. Vanbestco Scandanavia*,
    AB, No. 5:14-CV-141, 2014 WL 6682440 (D. Vt. Nov. 25, 2014) ........................17

*Katz v. Cellco P'ship*,
    794 F.3d 341 (2d Cir. 2015)..................................................................................24

*Khanna v. Am. Express Co.*,
    No. 11 Civ. 6245 (JSR), 2011 WL 6382603 (S.D.N.Y. Dec. 14, 2011)..................9

*Klein v. ATP Flight Sch., LLP*,
    No. 14-CV-1522 JFB GRB, 2014 WL 3013294 (E.D.N.Y. July 3, 2014) .............15

*Lapina v. Men Women N.Y. Model Mgmt.*,
    86 F. Supp. 3d 277 (S.D.N.Y. 2015).....................................................................15

*Laumann v. N.H.L.*,
    989 F. Supp. 2d 329 (S.D.N.Y. 2013)...................................................................15

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017)............................................................................ *passim*

*Moore v. Microsoft Corp.*,
    293 A.D.2d 587 (2d Dep't 2002) ..........................................................................11

*More Roofing, Inc. v. Scrivens*,
    No. 19-CV-4925 (NGG)(LB), 2021 WL 413605 (E.D.N.Y. Feb. 5, 2021) .............7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983).................................................................................................8, 9

*Nials v. Bank of Am.*,
    No. 13 Civ. 5720(AJN), 2014 WL 2465289 (S.D.N.Y. May 30, 2014)................21

*Nicholas v. Wayfair Inc.*,
    410 F. Supp. 3d 448 (E.D.N.Y. 2019) ..................................................................12

*Nicosia v. Amazon.com, Inc.*,
    No. 14 CV 4513 (SLT)(LB), 2017 WL 10111078 (E.D.N.Y. Aug. 18, 2017)........7

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016)............................................................................10, 16

*Oppenheimer Co. v. Neidhardt*,
    56 F.3d 352 (2d Cir. 1995).....................................................................................7

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
   85 N.Y.2d 20 (1995) .................................................................................19

*Parisi v. Goldman, Sachs & Co.*,
   710 F.3d 483 (2d Cir. 2013)...........................................................................9

*Perfect Dental, PLLC v. Allstate Ins. Co.*,
   Nos. 04 CV 0586, 04 CV 0588, 2006 WL 2552171 (E.D.N.Y. Aug. 31, 2006) ...................21

*Plavin v. Grp. Health Inc.*,
   35 N.Y.3d 1, *reargument denied*, 35 N.Y.3d 1007 (2020) ......................................18

*R.H. Damon & Co. v. Softkey Software Prods., Inc.*,
   811 F. Supp. 986 (S.D.N.Y. 1993)...................................................................22

*In re RealNetworks, Inc.*,
   No. 00–C–1366, 2000 WL 631341 (N.D. Ill. May 8, 2000) ......................................11

*Register.com, Inc. v. Verio, Inc.*,
   356 F.3d 393 (2d Cir. 2004)...........................................................................22

*Reid v. Supershuttle Int'l, Inc.*,
   08-CV-4854 (JG)(VVP), 2010 WL 1049613 (E.D.N.Y. Mar. 22, 2010) .............................13

*Republic of Ecuador v. Chevron Corp.*,
   638 F.3d 384 (2d Cir. 2011)...........................................................................17

*Richmond v. Nat'l Grid, Brooklyn Union Gas Co.*,
   553 Fed. App'x 56 (2d Cir. 2014).....................................................................19

*Saizhang Guan v. Uber Techs., Inc.*,
   236 F. Supp. 3d 711 (E.D.N.Y. 2017) ...............................................................13

*Sgouros v. Trans Union Corp.*,
   817 F. 3d 1029 (7th Cir. 2016) ......................................................................11

*Sollinger v. SmileDirectClub, LLC*,
   No. 19-CV-5977 (JPO), 2020 WL 774135 (S.D.N.Y. Feb. 18, 2020) .......................... *passim*

*Starke v. Gilt Groupe, Inc.*,
   No. 13 CIV. 5497 (LLS), 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) ..............................12

*Tray–Wrap, Inc. v. Veneman*,
   No. 02 Civ. 6898(RCC), 2004 WL 2346619 (S.D.N.Y. Oct. 18, 2004)...............................23

*Uddo v. DeLuca*,
   425 F. Supp. 3d 138 (E.D.N.Y. 2019) ...............................................................21

*Udell v. Berkshire Life Ins. Co. of Am.*,
    No. 03–CV–2721 (SJF)(KAM), 2005 WL 1243497 (E.D.N.Y. May 25, 2005) ...................22

*Wilson v. Nw. Mut. Ins. Co.*,
    625 F.3d 54 (2d Cir. 2010).................................................................................................18

*WorldCrisa Corp. v. Armstrong*,
    129 F.3d 71 (2d Cir. 1997).................................................................................................16

**Statutes**

9 U.S.C. § 1 ....................................................................................................................................7

9 U.S.C. § 3 ................................................................................................................................7-8

9 U.S.C. § 4 ................................................................................................................................7-8

Fed. R. Civ. P. 56 ...........................................................................................................................7

N.Y. Gen. Bus. Law § 349 .....................................................................................................18-21

N.Y. Gen. Bus. Law § 350..................................................................................................18, 20, 21

**Other Authorities**

AAA Comm. Arbitration Rules and Mediation Procedures,
    https://adr.org/sites/default/files/Commercial%20Rules.pdf (last visited May
    9, 2022) ...........................................................................................................................15

## **PRELIMINARY STATEMENT**

Plaintiff Tania Galarza ("Plaintiff") alleges that she suffered an injury while using clear aligners prescribed by a New York-licensed dentist and periodontal specialist, Eric Guirguis, D.D.S. ("Dr. Guirguis"). Dr. Guirguis operates Periodontal Specialists, Inc. ("PSI") and engaged SmileDirectClub, LLC ("SDC") to use its teledentistry platform and other dental support organization services to treat his patients, including Plaintiff. Plaintiff asserts various claims related to her dissatisfaction with her clear aligner therapy against SDC, PSI, and Dr. Guirguis, as well as an unrelated third party that processes payments for SDC customers, Healthcare Finance Direct, LLC ("HFD," and collectively with SDC, PSI, and Dr. Guirguis, "Defendants").

Plaintiff's lawsuit fails for many reasons, but one reason is clearly dispositive at this stage—the parties unambiguously agreed to arbitrate any dispute. The relevant arbitration provision is enforceable and governs all of Plaintiff's causes of action, and this case should be dismissed entirely. In fact, two years ago, Judge Oetken of the Southern District of New York enforced a nearly identical SDC arbitration provision in *Sollinger v. SmileDirectClub, LLC*, No. 19-CV-5977 (JPO), 2020 WL 774135, at *2 (S.D.N.Y. Feb. 18, 2020). *Sollinger*, and the many cases cited by the court in that decision, are dispositive and make clear that arbitration is required here. The broad arbitration provision covers all of Plaintiff's claims, and the Court should dismiss the entire action accordingly.

Should the Court consider the merits of Plaintiff's case, it should dismiss HFD from this action. Plaintiff has failed to plead any allegations of wrongdoing against HFD, a third-party entity that processes SDC customer installment payments and is wholly uninvolved in the prescription of clear aligners. Moreover, Plaintiff lacks any basis to sue HFD, as evinced by the nonexistence of well-pleaded facts against HFD.

## STATEMENT OF FACTS

### A.    The Parties.

Plaintiff is an individual residing in Staten Island. Compl. ¶ 1. SDC is an oral care company that provides DSO services[1] and its proprietary and innovative telehealth platform to dental practices, and their affiliated dentists and orthodontists, that have engaged SDC for the provision of these services and for the supply of clear dental aligners and other products. Declaration of Justin Skinner ("Skinner Decl.") ¶ 3. SDC works with licensed dentists and orthodontists to oversee care of its patients. *Id.* ¶ 4. Dr. Guirguis is one of the hundreds of doctors within SDC's network of affiliated dentists and orthodontists. *Id.* ¶ 5. Dr. Guirguis prescribed and supervised Plaintiff's specific treatment. *Id.* PSI is Dr. Guirguis's dental practice. Compl. ¶ 27. HFD is an independent company that processes customer finance options for SDC if customers elected to pay for their clear aligner therapy over time rather than a single payment. Declaration of Augustin Razo ("Razo Decl.") ¶ 3. Patients seeking aligners can either visit a brick-and-mortar "SmileShop" for in-person scans or they can use a special home-kit to provide teeth impressions, both of which result in the creation of 3D images. Skinner Decl. ¶ 6. A licensed dentist reviews the 3D images, photos, and medical history to prescribe and manage a custom aligner treatment plan. *Id.* ¶ 7.

### B.    The SDC Registration Process Requires Consumers to Agree to the Informed Consent Containing a Valid Arbitration Provision.

To become an SDC clear aligner candidate, consumers must first register by creating an account. *Id.* ¶¶ 8-9. Consumers, like Plaintiff, can create an account themselves directly through the company's website, at www.smiledirectclub.com, or during a visit to a SmileShop where they are required to complete the same online process. *Id.*

---

[1] Dental Services Organizations ("DSO") contract with dental practices to provide critical business management and support including non-clinical operations. *See* https://www.theadso.org/about-dsos (last visited May 10, 2022).

The final step of the registration process requires consumers to agree to SDC's Informed Consent ("Informed Consent") and Terms & SmilePay Conditions ("T&Cs"). *Id.* ¶ 10. During this step, consumers are presented with a clickwrap agreement on an uncluttered page in which they must create a password, enter their birth date, and affirmatively click on an unchecked assent box:

JUST ONE MORE THING

## Thank You For Your Purchase

Now, all you need to do is create a password and enter your date of birth below to finish setting up your account.

PASSWORD

CONFIRM PASSWORD

⦿ This order is for me

◯ This order is for somebody else

Date of Birth

MM    DD    YYYY

☐ I agree to SmileDirectClub's Informed Consent and Terms & SmilePay Conditions

How did you hear about us?

PLEASE SELECT ⌄

FINISH MY ACCOUNT

*Id.* ¶¶ 10, 12-13. The checkbox itself is conspicuous and, importantly, is not pre-checked. *Id.* ¶ 10. In other words, a consumer must manually check and confirm that "I agree to SmileDirectClub's

**Informed Consent** and **Terms** & **SmilePay Conditions**," each of which is clearly presented to the consumer in contrasting, underlined blue hyperlinks that, when clicked, take the consumer to a new page that displays the full text of each agreement (which can also be downloaded and printed). *Id.* ¶ 14-15. Consumers who do not check the box agreeing to the terms cannot become SDC customers, and, as described further below, SDC maintains electronic records that confirm the precise date and time consumers (including Plaintiff) manifest agreement. *Id.* ¶¶ 9, 16, 19-26.

The Informed Consent contains a clear and unambiguous agreement to arbitrate, via the following express arbitration provision (the "Arbitration Agreement"):

> AGREEMENT TO ARBITRATE – I hereby agree that any dispute regarding the products and services offered through SmileDirectClub and/or by my affiliated dental professionals, including but not limited to medical malpractice disputes, will be resolved through final and binding arbitration before a neutral arbitrator and not by lawsuit filed in any court, except claims within the jurisdiction of Small Claims Court. I understand that I am waiving any right I might otherwise have to a trial by a jury. I understand that to initiate the arbitration, I must send a Demand for Arbitration via U.S. Mail, postage prepaid to Alex Fenkell, SmileDirectClub, LLC, Bank of America Plaza, 414 Union Str., 8th Floor, Nashville, Tennessee 37219. The Demand for Arbitration must be in writing to all parties, identify each defendant, describe the claim against each party, state the amount of damages sought, and include the names of the patient and his/her attorney. I agree that the arbitration shall be conducted by a single, neutral arbitrator selected by the parties and shall be resolved using the rules of the American Arbitration Association.

*Id.* at ¶ 18; *see also* Skinner Decl. Exs. 1-2.[2] In *Sollinger*, Judge Oetken reviewed and approved of a nearly identical arbitration clause contained within SDC's click-wrap Informed Consent. Judge Oetken held that SDC's "registration screen is relatively uncluttered," the hyperlink to the Informed Consent containing the arbitration clause is "directly adjacent to the button intended to manifest assent to the terms," and the "website provides the requisite inquiry notice." *Sollinger*, 2020 WL 774135, at *2-4 (citations and internal quotations omitted).

---

[2] As described below, Plaintiff agreed to the Arbitration Agreement twice: Version 5 on January 21, 2019, and Version 7 on June 10, 2019, both of which are attached as exhibits to the Skinner Declaration. The Arbitration Agreement language is identical in both versions. Skinner Decl. ¶¶ 27, 29.

### C.    Plaintiff Agreed to the Arbitration Agreement on Two Separate Occasions.

A consumer's agreement to SDC's Informed Consent and T&Cs is actually a two-step process. *First*, the consumer must affirmatively check the box next to "I agree to SmileDirectClub's **Informed Consent** and **Terms** & **SmilePay Conditions**." *Second*, after checking that box, the consumer must click again and select the "Finish My Account" to complete the registration.

Plaintiff agreed to SDC's Informed Consent, and the within Arbitration Agreement, at least twice. *First*, Plaintiff assented to the Informed Consent and T&Cs on January 21, 2019 at 12:55 A.M. when she registered to become a SDC customer online using the company's website and booked a SmileShop appointment for later that day. Skinner Decl. ¶¶ 23-24, 26. Plaintiff agreed to arbitrate—*for a second time*—on June 10, 2019, when she again agreed to the Informed Consent and T&Cs, reaffirming her commitment to arbitrate any dispute with SDC. *Id.* ¶ 26.

SDC's servers maintain an electronic file for each customer, including Plaintiff, which logs each customer's transactions and interactions, including assent to the Informed Consent and T&Cs, using Coordinated Universal Time ("UTC"). *Id.* ¶¶ 19-20. The following is a screenshot of the data exported from one of SDC's servers, which recorded the exact date and time that Plaintiff first manifested her agreement to the Informed Consent (and Arbitration Agreement) by clicking on the box next to "I agree to SmileDirectClub's Informed Consent and Terms & SmilePay Conditions" as of January 21, 2019 at 14:22:00 UTC (i.e., 2:20 PM UTC):

| ID | DATE_CREATED | DATE_UPDATED | DATE_REMOVED | ACCEPTED_AT | FIRST_NAME | LAST_NAME | CASE_ID | DOCUMENT_ID | PATIENT_ID | USER_ID | DOCUMENT_TYPE | EMAIL_ADDRESS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1266230 | 2019-01-21T14:22:00.184906Z | 2019-06-10T22:00:09.212368Z | | 2019-06-10T22:00:09.212359Z | Tania | Galarza | 1182963 | 8 | 1192148 | 1200153 | consent | tmgalarza@gmail.com |
| 1540435 | 2019-01-21T00:55:23.997168Z | 2019-06-10T00:55:24.002047Z | | 2019-01-21T00:55:24.002037Z | Tania | Galarza | 1182963 | 28 | 1192148 | 1200153 | sms_terms | tmgalarza@gmail.com |
| 3174207 | 2019-01-21T14:22:00.200827Z | 2019-06-10T22:00:09.186268Z | | 2019-06-10T22:00:09.186259Z | Tania | Galarza | 1182963 | 16 | 1192148 | 1200153 | terms | tmgalarza@gmail.com |

*Id.* ¶ 23. The first row of the data set shows the date and time (under the column heading "DATE_CREATED") that Plaintiff agreed to the Informed Consent (which is identified in column

12 under the heading "DOCUMENT_TYPE") and the third row shows the date and time she agreed to the T&Cs. *Id.* ¶ 23. The data also shows that Plaintiff agreed a second time to SDC's Informed Consent and T&Cs on June 10, 2019, at 10:00 PM UTC (under the column heading "DATE_UPDATED"). *Id.* ¶ 26. The column heading "ACCEPTED_AT" shows the last date of Plaintiff's keystrokes accepting each of the agreements.[3]

As with all customers, Plaintiff checked the requisite box assenting to the Informed Consent and T&Cs. *Id.* ¶¶ 23, 26. After that, Plaintiff had to select "Finish My Account" to proceed with her registration. *Id.* ¶ 15. When Plaintiff was presented with this screen, she had the option to click the "Informed Consent" hyperlink and would then be presented with the entire agreement. *Id.* ¶¶ 14, 22, 28. Plaintiff also had the option to download or print the Informed Consent and T&Cs. *Id.* ¶ 14. As with all customers, Plaintiff could not have completed her online registration without assenting to the Informed Consent and T&Cs. *Id.* ¶ 9, 16.

**D.    The Dispute and Procedural History.**

Although Plaintiff's Complaint is a hodgepodge of disjointed and vague allegations, Plaintiff appears to allege that the SDC aligners, prescribed by Dr. Guirguis, damaged her teeth. Compl. ¶ 34. Plaintiff originally filed her Complaint in the Supreme Court for the State of New York, Kings County, and Defendants removed the action to this Court. Dkt. Nos. 1-2. The parties agreed to several extensions of Defendants' time to answer or respond, and Defendants (timely) filed this Motion rather than answering the Complaint, which is the appropriate manner in which to seek enforcement of an arbitration provision. *See, e.g.*, *Jackson v. Rushmore Serv. Ctr., LLC*, No. 18-CV-4587(SJF)(AYS), 2019 WL 4736914, at *2 (E.D.N.Y. Sept. 27, 2019). Such a motion

---

[3] Although not relevant here, the second row depicted in the screenshot of the data exported from SDC's servers also shows that Plaintiff agreed to SDC's "sms_terms" earlier in the day on January 21, 2019, at 12:55 AM UTC, most likely when she booked her SmileShop visit online. The "sms_terms" relates to an agreement to receive text messages and is not at issue here. Skinner Decl. ¶ 24 and n.3.

to compel is non-dispositive. *Nicosia v. Amazon.com, Inc.*, No. 14 CV 4513 (SLT)(LB), 2017 WL 10111078, at *1 (E.D.N.Y. Aug. 18, 2017), *report and rec. adopted*, 384 F. Supp. 3d 254 (E.D.N.Y. 2019), *aff'd*, 815 F. App'x 612 (2d Cir. 2020).

## STANDARD OF REVIEW

Defendants bring this Motion under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), which allows a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to petition the District Court to order or refer the matter to arbitration. 9 U.S.C. §§ 3-4. In deciding a motion to compel arbitration, courts apply a "standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). This means that the Court may "consider all relevant, admissible evidence submitted by the parties and contained in 'pleadings, depositions, answers to interrogatories, and admissions on file, together with…affidavits.'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) (quoting Fed. R. Civ. P. 56(c)). "Where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, we may rule on the basis of that legal issue and avoid the need for further court proceedings." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (citations and quotations omitted). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995). When a court decides it should compel arbitration, "Courts have the discretion to dismiss—rather than stay—an action when *all* of the issues in it must be arbitrated." *More Roofing, Inc. v. Scrivens*, No. 19-CV-4925 (NGG)(LB), 2021 WL 413605, at *1 n.2 (E.D.N.Y. Feb. 5, 2021) (citation omitted) (emphasis in original).

Federal Rule 12(b)(6) provides for dismissal when a complaint fails to state a claim upon which relief may be granted. To survive a motion to dismiss, a plaintiff must proffer "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

## **ARGUMENT**

## I.    **INTRODUCTION TO THE FAA.**

The FAA provides, in relevant part:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement….

9 U.S.C. § 3.

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

Congress' "clear intent" in enacting the FAA was "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l*

*Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). The Second Circuit recognizes this "preference for enforcing arbitration agreements applies even when the claims at issue are federal statutory claims…." *Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 486 (2d Cir. 2013). Thus, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citation and quotation omitted). "The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Khanna v. Am. Express Co.*, No. 11 Civ. 6245 (JSR), 2011 WL 6382603, at *2 (S.D.N.Y. Dec. 14, 2011) (quoting *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000)).

To decide a motion to compel arbitration under the FAA, the Court considers "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). Further, arbitrability is presumably determined by the Court, but this presumption can be overcome upon "*clear and unmistakable evidence*…that the parties intended that the question of arbitrability shall be decided by the arbitrator." *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (citation omitted). "Where the scope of an arbitration agreement is ambiguous, the Federal Arbitration Act's policy favoring arbitration requires that any doubts be resolved in favor of arbitration." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25) (internal quotations omitted).

## II.    PLAINTIFF EXPRESSLY AGREED TO ARBITRATE HER CLAIMS.

Plaintiff undoubtedly agreed to arbitrate under the Arbitration Agreement contained in the Informed Consent, which Judge Oetken previously ruled was enforceable. *See generally Sollinger*,

2020 WL 774135. "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally…should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "Under New York law, the touchstone of contract is mutual manifestation of assent, whether by written or spoken word or by conduct." *Sollinger*, 2020 WL 774135, at *2 (citations quotations omitted). "In the context of agreements made over the internet, New York courts find that binding contracts are made when the user takes some action demonstrating that she has at least constructive knowledge of the terms of the agreement, from which knowledge a court can infer acceptance." *Kai Peng v. Uber Techs., Inc*., 237 F. Supp. 3d 36, 47 (E.D.N.Y. 2017) (quoting *Hines v. Overstock.com, Inc.*, 380 Fed. App'x 22, 25 (2d Cir. 2010)) (internal quotations omitted). "A party may be bound to a click-wrap agreement…by clicking a button declaring assent, so long as the party is given a sufficient opportunity to read the agreement, and assents thereto after being provided with an unambiguous method of accepting or declining the offer." *Id.* (citations and quotations omitted). The party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010).

A.    **Plaintiff Agreed to Arbitrate.**

Here, Plaintiff was presented with and agreed to the Informed Consent, which contained the Arbitration Agreement, twice—upon her initial January 21, 2019 visit and again upon a follow-up visit on June 10, 2019. Skinner Decl. ¶¶ 23-27. Plaintiff agreed to the Arbitration Agreement, which is a valid clickwrap agreement that the court in *Sollinger* previously ruled was enforceable.

A clickwrap agreement is an agreement where a user manifests assent by clicking an "I agree" box after being presented with a list of terms and conditions of use. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016). The Second Circuit, along with courts around the country, has "recognized that [an] electronic 'click' can suffice to signify the acceptance of a

contract" and that same is binding on the user. *Meyer*, 868 F.3d at 75 (quoting *Sgouros v. Trans Union Corp.*, 817 F. 3d 1029, 1033-34 (7th Cir. 2016)); s*ee, e.g., Fteja v. Facebook, Inc*., 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012) (collecting cases); *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 397 (E.D.N.Y. 2015); *Moore v. Microsoft Corp.*, 293 A.D.2d 587 (2d Dep't 2002) (contract formed when "[t]he terms of the [agreement] were prominently displayed on the program user's computer screen before the software could be installed," and "the program's user was required to indicate assent to the [agreement] by clicking on the 'I agree' icon before proceeding with the download"); *In re RealNetworks, Inc.*, No. 00–C–1366, 2000 WL 631341, at *6 (N.D. Ill. May 8, 2000) (approving license agreement placed in pop-up window with scroll bar). There is nothing "offensive" about clickwrap agreements "as long as the layout and language of the site" gives Plaintiff "reasonable notice that a click will manifest assent to an agreement." *Meyer*, 868 F. 3d at 75 (citation omitted). Within the Second Circuit, clickwrap agreements containing arbitration provisions are typically found to be valid "where the existence of the terms was reasonably communicated to the user." *Id.* at 76. If the user never read the relevant terms, the question turns on whether a reasonable user was on inquiry notice, or "would know that by clicking the registration button, he was agreeing to the terms and conditions accessible via the hyperlink, whether he clicked on the hyperlink or not." *Id.* at 79-80.

Here, the relevant Arbitration Agreement is contained within the Informed Consent, which is a clickwrap agreement and to which Plaintiff assented twice. Skinner Decl. ¶¶ 17-27. The screen presented to Plaintiff was uncluttered and only contained a few fields, in addition to the field hyperlinking to the Informed Consent. *Id.* ¶ 12. Further, the words "Informed Consent" are underlined and appear in blue, indicating the presence of a hyperlink and differentiating it from the other text on the page. *Id* ¶14. Thus, Plaintiff had adequate notice of the Arbitration Agreement

and affirmatively manifested her assent to the same. Whether or not Plaintiff read the Informed Consent, specifically, the Arbitration Agreement, Plaintiff is deemed by law to have assented to them. *See Meyer*, 868 F.3d at 78 (concluding that plaintiff had notice of terms of use and arbitration provision when the checkout screen was "uncluttered," the text "including the hyperlinks to the Terms and Conditions… appear[ed] directly below the buttons for registration," the text was in a "dark print" "contrast[ing] with the bright white background," and the hyperlinks were underlined); *Nicholas v. Wayfair Inc.*, 410 F. Supp. 3d 448, 454 (E.D.N.Y. 2019) (enforcing arbitration provision in clickwrap agreement where "text indicating that submitting an order would result in acceptance of the terms and conditions was clearly visible [and a] hyperlink to the terms and conditions was also on every page of the website Plaintiff visited."); *Starke v. Gilt Groupe, Inc.*, No. 13 CIV. 5497 (LLS), 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) (compelling arbitration under New York law because "[r]egardless of whether he actually read the contract's terms, Starke was directed exactly where to click in order to review those terms, and his decision to click the 'Shop Now' button represents his assent to them"); *Sollinger*, 2020 WL 774135, at *2 (enforcing SDC's arbitration clause where clickwrap agreement only referred the user to "the assent process by which a user must click 'I agree,'" and provided a hyperlink to the agreement).

**B.    Plaintiff's Reaffirmation of the Arbitration Agreement Leaves No Doubt that This Action Must be Filed in AAA.**

Plaintiff's second affirmation of her agreement to arbitrate "any dispute regarding the products and services offered through SmileDirectClub and/or by my affiliated dental professionals" makes this Motion even stronger than the one filed in *Sollinger*. *See* Skinner Decl., Ex. 1 at p. 4. "Courts applying New York law consistently have held that customers accept revised terms of their accounts by continuing to use their accounts after receiving the revised terms." *Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 726 (E.D.N.Y. 2017) (citations omitted).

In fact, "the Second Circuit has held that arbitration clauses without an express limitation to future disputes should be applied to any preexisting claims." *Id.* (quoting *Reid v. Supershuttle Int'l, Inc.*, 08–CV–4854 (JG)(VVP), 2010 WL 1049613, at *6 (E.D.N.Y. Mar. 22, 2010)) (quotations and additional citation omitted). "[T]he relevant question is not when the plaintiffs' claims arose, but whether they arise under their agreements with the defendants." *Id.* (citations omitted).

Plaintiff first agreed to the Informed Consent and the Arbitration Agreement on January 21, 2019—before she ever could have become a SDC customer or had her teeth scanned. Skinner Decl. ¶¶ 11, 23. Plaintiff then assented—*a second time*—to the Informed Consent and the Arbitration Agreement on June 10, 2019. *Id.* ¶ 26. Before agreeing, Plaintiff had the option to read, download, or print the terms of the Informed Consent, including within Arbitration Agreement. *Id.* ¶¶ 14, 22, 28. Thus, we can presume that Plaintiff understood what she was agreeing to when she assented to the Informed Consent. *Chanchani v. Salomon/Smith Barney, Inc.*, No. 99 Civ. 9219 RCC, 2001 WL 204214, at *2 (S.D.N.Y. Mar. 1, 2001) (enforcing arbitration provision, finding that a "party generally will be held to a signed contract unless he can demonstrate special circumstances…that contradict his intent to be bound"); *Reid*, 2010 WL 1049613, at *2, 4 (finding arbitration clauses signed by five plaintiffs were not unconscionable and enforcing class action waiver provision).

### C.    The Arbitration Agreement Is Clear and Conspicuous and Judge Oetken Upheld a Nearly Identical Arbitration Agreement in *Sollinger*.

Finally, as set forth above (*supra* p. 4), the Arbitration Agreement within the Informed Consent is conspicuous and has already been upheld by another court. Where an arbitration provision is reasonably conspicuous, its location within the document is irrelevant to its enforceability or applicability. *See Meyer*, 868 F.3d at 78-79; *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-04570(LAK)(KHP), 2017 WL 7309893, at *10 (S.D.N.Y. Nov. 20,

2017), *report and rec. adopted as modified*, 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018) ("[T]he court in *Meyer* explicitly rejected the proposition that the location of an arbitration provision within a broader terms of use policy is a barrier to reasonable notice.").

There can be no dispute that the Arbitration Agreement is conspicuous. It is contained under two headings titled "AGREEMENT TO ARBITRATE." Ex. 1, p. 4. It contains clear language that any dispute is covered by binding arbitration under AAA by a single arbitrator and that Plaintiff waived any right to a trial by jury. *Id.* When Plaintiff was required to assent to the Informed Consent, she had the ability to review *the entirety of the* Informed Consent, including the Arbitration Agreement. Skinner Decl. ¶¶ 14, 22, 28. Regardless of whether she read it, Plaintiff had reasonable notice of the Arbitration Agreement.

As discussed earlier, the Southern District of New York recently upheld a nearly identical SDC Informed Consent, and the within arbitration clause. In *Sollinger v. SmileDirectClub, LLC*, Plaintiff brought a putative class action against SDC, claiming the aligners caused tooth damage. 2020 WL 774135, at *1. Plaintiff signed a version of SDC's Informed Consent, which contained a nearly identical arbitration provision. *Id.* There, as here, the Informed Consent was presented to Plaintiff as a clickwrap agreement as part of the account registration process. *Id.* at *2. The *Sollinger* Court held that the SDC interface provided Plaintiff with the requisite inquiry notice and, therefore, the arbitration provision was valid and binding on Plaintiff. *Id.* In so holding, the court cited to many of the same cases within the Second Circuit cited in this motion. *Id.* The facts are nearly identical here, and there is no reason that this Court should find any differently here.

## III.    THE ARBITRATOR SHOULD DECIDE ALL QUESTIONS OF ARBITRABILITY.

The next step in the arbitration inquiry is whether the dispute falls within the Arbitration Agreement, which is a determination that must be made by the arbitrator here. *See Sollinger*, 2020 WL 774135, at *2. There is a "general presumption that the issue of arbitrability should be resolved

by the courts," which is overcome by "*clear and unmistakable evidence*…that the parties intended that the question of arbitrability shall be decided by the arbitrator." *Contec Corp.*, 398 F.3d at 208 (citation omitted). One such example is the parties' choice to "incorporat[e] by reference the…Rules [of the American Arbitration Association]," because those rules include an instruction that arbitrators are to determine their own jurisdiction. *Id.* at 211; *see also Lapina v. Men Women N.Y. Model Mgmt.*, 86 F. Supp. 3d 277, 283–84 (S.D.N.Y. 2015) ("[A] party who signs a contract containing an arbitration clause and incorporating by reference the AAA rules…cannot [later] disown its agreed-to obligation to arbitrate all disputes, including the question of arbitrability.") (citations and quotations omitted). Moreover, where "there is a legitimate dispute about the scope and applicability of the [arbitration] clause, the threshold question of arbitrability must be referred to the arbitrat[ors]." *Laumann v. N.H.L.*, 989 F. Supp. 2d 329, 334, 338 (S.D.N.Y. 2013).

Here, the Arbitration Agreement provides that any arbitration would be resolved "using the rules of the American Arbitration Association." Ex. 1, p. 4. Rule 7(a) of the AAA Commercial Rules states: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Comm. Arbitration Rules and Mediation Procedures, https://adr.org/sites/default/files/Commercial%20Rules.pdf (last visited May 10, 2022). Thus, an arbitrator, not this Court, should determine whether any (or all) of Plaintiff's claims are subject to arbitration. *See Sollinger*, 2020 WL 774135, at *3 (holding an arbitrator was to decide the issues of arbitrability where the arbitration clause provided that any arbitration "shall be resolved using the rules of the American Arbitration Association."); *Klein v. ATP Flight Sch., LLP*, No. 14-CV-1522 JFB GRB, 2014 WL 3013294, at *10 (E.D.N.Y. July 3, 2014) ("[T]he

parties' incorporation of the AAA Rules by reference in the arbitration clause is further evidence of their clear and unmistakable intent to delegate questions of arbitrability to arbitration.").

## IV.    ALL OF PLAINTIFF'S CLAIMS ARE SUBJECT TO ARBITRATION.

Even if the Court is unconvinced that the arbitrator should decide the issue of arbitrability, upon its own consideration of this issue, the Court should find that all of Plaintiff's causes of action fall within the broad scope of the Arbitration Agreement. Under the FAA, a court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs.*, 475 U.S. at 650 (citation omitted).

The Arbitration Agreement provides (in part): "I hereby agree that *any dispute* regarding the products and services offered through SmileDirectClub and/or by my affiliated dental professionals, including but not limited to medical malpractice disputes, *will be resolved through final and binding arbitration*…." Ex. 1, at p. 4 (emphasis added). Courts are especially deferential to "broad" arbitration agreements, such as this one, which are "presumptively applicable to disputes involving matters going beyond the interpretation or enforcement of particular provisions of the contract." *JLM Indus. v. Stolt-Nielsen SA*, 387 F.3d 163, 172 (2d Cir. 2004) (citation and quotations omitted). "The Supreme Court has repeatedly instructed that the FAA 'embodies a national policy favoring arbitration.'" *Nicosia*, 834 F.3d at 228-29 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011)) (internal citation omitted). "Indeed, the FAA leaves no place for the exercise of discretion by the district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *FUJIFILM N. Am. Corp. v. Geleshmall Enters. LLC*, 239 F. Supp. 3d 640, 647 (E.D.N.Y. 2017) (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997)) (internal quotations omitted). "If the allegations underlying the claims touch matters covered by

16

the parties' contracts, then those claims must be arbitrated." *JLM Indus.*, 387 F.3d at 172 (citations and quotations omitted).

A full review of Plaintiff's Complaint shows that this case arises out of and relates to SDC's "products and services," which are specifically subject to the Arbitration Agreement. All of Plaintiff's damages flow from physical injuries allegedly caused by SDC's defective design of the aligners, negligent provision of dental services, and improper advertisements of SDC's "products and services." Further the Arbitration Agreement states that it applies to "SmileDirectClub and/or by my affiliated dental professionals." Ex. 1, p. 4. Although the Informed Consent is an agreement between Plaintiff and SDC, because Dr. Guirguis and PSI are "affiliated dental professionals," these defendants fall within the broad ambit of the Arbitration Agreement and Plaintiff must arbitrate against those defendants as well. As to HFD, although perhaps not included in the Arbitration Agreement, it can, and does, consent to arbitration. Razo Decl. ¶ 6. "The Second Circuit has recognized that a defendant who was not a party to the original arbitration agreement has 'created a separate binding agreement to arbitrate' the dispute 'by consenting to arbitration.'" *Kastner v. Vanbestco Scandanavia*, AB, No. 5:14-CV-141, 2014 WL 6682440, at *6 (D. Vt. Nov. 25, 2014) (quoting *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 392 (2d Cir. 2011)). And certainly, if Plaintiff must arbitrate her claims against SDC, Dr. Guirguis, and PSI, it is judicially efficient for Plaintiff to also arbitrate against HFD. Thus, this Court can and should compel arbitration of *all* of Plaintiff's causes of action.

## V.    SHOULD THE COURT DECIDE AGAINST ARBITRATION, THE COMPLAINT SHOULD BE DISMISSED AGAINST HFD FOR FAILURE TO STATE A CLAIM.

If this Court is unpersuaded that Plaintiff must arbitrate (or at least as against HFD), this Court should dismiss HFD from the case because Plaintiff fails to state a claim against it. Plaintiff brings three causes of action against HFD: (1) violation of New York General Business Law

("GBL") § 349 (Fourth Cause of Action); (2) violation of GBL § 350 (Fifth Cause of Action), and (3) breach of contract (Sixth Cause of Action). Each will be discussed in turn.

> **A.    Plaintiff Cannot Articulate a Cause of Action Under Either GBL §§ 349 or 350 Because There Are No Allegations of Consumer-Oriented Practices.**

GBL § 349 is a limited statutory cause of action that prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). Similarly narrow, GBL § 350 prohibits "false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful." *Id.* § 350. Plaintiff falls far short of pleading either claim.

"To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 258 (2d Cir. 2021) (citation omitted). The standard is the same under GBL § 350. *Plavin v. Grp. Health Inc.*, 35 N.Y.3d 1, 10, *reargument denied*, 35 N.Y.3d 1007 (2020). "[A]n act or practice is consumer-oriented when it has a broader impact on consumers at large." *Abdallah v. LexisNexis Risk Sols. FL Inc.*, No. 19-CV-3609 (MKB), 2021 WL 6197060, at *9 (E.D.N.Y. Dec. 30, 2021) (quoting *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 37 N.Y.3d 169, 177 (2021)) (quotations and other citations omitted). "The 'consumer-oriented' requirement may be satisfied by showing that the conduct at issue 'potentially affects similarly situated consumers.'" *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (citations omitted). However, "[w]hen a plaintiff 'makes only conclusory allegations of impact on consumers at large, a GBL § 349 claim must be dismissed.'" *Abdallah*, 2021 WL 6197060, at *9 (citations omitted).

Here, Plaintiff's cause of action for a violation of GBL § 349 consists of the following bare bones, conclusory allegations:

61. Defendants CLUB and FINANCE engaged in consumer oriented business practices which were misleading to consumers, including the plaintiff, TANIA GALARZA, in violation of General Business Law §349.

62. Defendants CLUB and FINANCE made deceptive acts or practices in the conduct of its service business within the State of New York to the plaintiff, TANIA GALARZA.

63. Defendants CLUB and FINANCE, represented to plaintiff, in a deceptively material way, that she would be treated and overseen by an appropriate dental professional for the duration of her care by CLUB.

64. The dental professional assigned to plaintiff's care by defendants CLUB and FINANCE was the defendant, ERIC, who had no background, skill, or training in orthodontics.

65. Defendants CLUB and FINANCE injured the plaintiff, TANIA GALARZA, by their deceptive acts or practices and by their violation of General Business Law §349.

Compl. ¶¶ 61-65.[4] The only factual allegations are those regarding alleged misrepresentations about the kind of dental professional who would be overseeing *Plaintiff's treatment*. *Id.* ¶¶ 63-64. There are no factual allegations that anything HFD did potentially impacted consumers at large or even anyone beyond Plaintiff herself. In fact, the Complaint specifies that the representations regarding the kind of dental professional Plaintiff would receive were specific to her case, because she specifies that the dental professional *assigned to her care*, was a dentist with "no background, skill, or training in orthodontics." *Id.* ¶ 64. Thus, not only does Plaintiff's Fourth Cause of Action fail to assert a consumer-oriented business practice, but the facts pleaded suggest that this is a private, non-consumer-oriented dispute. *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995) ("Private contract disputes, unique to the parties…would not fall within the ambit of [§ 349]."); *Richmond v. Nat'l Grid, Brooklyn Union Gas Co.*, 553 Fed. App'x 56, 57 (2d Cir. 2014) (dismissing GBL § 349 claim because plaintiff

---

[4] Plaintiff refers to HFD as "FINANCE" and SDC as "CLUB" in the Complaint.

alleged that defendant acted improperly only with respect to plaintiff). The conclusory allegations here are wholly insufficient and Plaintiff's Fourth Cause of Action should be dismissed.

Plaintiff's cause of action for violation of GBL § 350 is similarly defective. Plaintiff's allegations are as follows:

> 69. Defendants CLUB and FINANCE engaged in consumer oriented advertising for their respective businesses, which was misleading and deceptive in a material way, to consumers, including the plaintiff, TANIA GALARZA, in violation of General Business Law §350.
>
> 70. The aforesaid deceptive and misleading advertising and omissions by defendants CLUB and FINANCE were likely to induce a consumer, like the plaintiff, TANIA GALARZA, to do business with defendants, CLUB and FINANCE.
>
> 71. Plaintiff, TANIA GALARZA, acted reasonably under the circumstances, when she responded to the aforesaid deceptive and misleading advertising proffered by defendants CLUB and FINANCE.
>
> 72. The aforesaid deceptive and misleading advertising by defendants CLUB and FINANCE, as aforesaid, had an impact on consumers at large, including the plaintiff, TANIA GALARZA.
>
> 73. Defendants CLUB and FINANCE injured the plaintiff, TANIA GALARZA, by their deceptive and misleading advertising and by their violation of General Business Law §350.

Compl. ¶¶ 69-73. These allegations—which bear a striking similarity to the allegations in the GBL § 349 claim—are also conclusory in nature and unsupported by any well-pleaded facts. There are also no allegations as to the contents of the supposedly false advertisement, which is unsurprising as HFD is a finance company that is not involved in the wrongdoing alleged by Plaintiff.

The crux of a GBL §§ 349 or 350 claim is that the deceptive practice or advertising is consumer-oriented. Without any allegations explaining how HFD's conduct was consumer-oriented (or the conduct itself), these claims necessarily fail. *See Perfect Dental, PLLC v. Allstate Ins. Co.*, Nos. 04 CV 0586, 04 CV 0588, 2006 WL 2552171, at *3 (E.D.N.Y. Aug. 31, 2006) (dismissing GBL § 349 claim where "plaintiffs failed to allege either sufficient or specific facts

concerning any alleged policy or practice by defendants that violated § 349 in their complaint"); *Fishberg v. State Farm Fire & Cas. Co.*, No. 20-CV-6664 (LJL), 2021 WL 3077478, at *4 (S.D.N.Y. July 20, 2021) (dismissing GBL §§ 349 and 350 claims in case against insurer related to denial of coverage because plaintiff's claims were conclusory and contained no factual allegations articulating how the conduct was consumer oriented); *Dunham v. Covidien, LP*, 498 F. Supp. 3d 549, 565 (S.D.N.Y. 2020) (dismissing GBL §§ 349 and 350 claims because "[b]eyond…conclusory allegation][s], the plaintiff has not alleged how the defendant's acts would mislead a reasonable consumer or that the defendant's acts or practices had a broader impact on consumers at large."); *Nials v. Bank of Am.*, No. 13 Civ. 5720(AJN), 2014 WL 2465289, at *3 (S.D.N.Y. May 30, 2014) (dismissing claims for lack of facts that defendant engaged in a specific consumer-oriented act or practice that was deceptive or misleading in a material way).

### B.    Plaintiff Fails to Identify a Contract With HFD or Plead a Breach Thereof.

Plaintiff's Sixth Cause of Action is for breach of contract as against HFD (and SDC). Plaintiff claims that she entered into a contract with HFD and SDC wherein HFD and SDC "guaranteed and promised" that "the process of straightening her teeth would be finished within five (5) months, and that she would have straight teeth." Compl. ¶ 78. Plaintiff asserts the "treatment did not end within five (5) months" and Plaintiff "was left with misaligned and damaged teeth and occlusion." *Id.* ¶ 79. But Plaintiff's allegations fall short of alleging a breach, let alone the existence of, a contract.

"To establish a breach of contract claim, a plaintiff must prove 'the existence of a contract, the plaintiff's performance under the contract, the defendant's breach of that contract, and resulting damages.'" *Uddo v. DeLuca*, 425 F. Supp. 3d 138, 150 (E.D.N.Y. 2019), *aff'd* 837 F. App'x 39 (2d Cir. 2020) (quoting *JP Morgan Chase v. J.H. Elec. of New York, Inc.*, 69 A.D.3d 802, 803 (2d Dep't 2010)). "To satisfy the first element, a plaintiff must show 'offer, acceptance, consideration,

mutual assent, and intent to be bound.'" *Billybey Marina Servs., LLC v. Affs. Afloat, Inc.*, No. 14-CV-6722 (SJ) (JO), 2016 WL 1266608, at *2 (E.D.N.Y. Mar. 11, 2016), *report and rec. adopted sub nom. Billybey Marina Servs., LLC. v. Affs. Afloat, Inc.*, No. 14-CV-6722 (SJ) (JO), 2016 WL 1271479 (E.D.N.Y. Mar. 11, 2016) (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004)).

First and foremost, Plaintiff fails to allege her own performance under the supposed contract. Nowhere in the Complaint does Plaintiff allege, even in conclusory or general fashion, that she performed *any* of her contractual obligations (or what those obligations entailed). *See* Compl. ¶¶ 76-80. "A claimant's failure to plead the performance of its own contractual obligations is fatal to a breach of contract claim even if the other requisite elements are properly pleaded." *Comfort Inn Oceanside v. Hertz Corp.*, No. 11-CV-1534 (JG)(JMA), 2011 WL 5238658, at *3–4 (E.D.N.Y. Nov. 1, 2011) (dismissing contract claim where plaintiff failed to plead performance and rejecting argument that performance was excused); *see also Global Crossing Bandwidth, Inc. v. PNG Telecomms., Inc.*, No. 06-CV-6415T, 2007 WL 174094, at *2 (W.D.N.Y. Jan. 22, 2007) (granting motion to dismiss due to plaintiff's failure "to allege that it adequately performed under the contract"); *Udell v. Berkshire Life Ins. Co. of Am.*, No. 03–CV–2721 (SJF)(KAM), 2005 WL 1243497, at *5 (E.D.N.Y. May 25, 2005) ("[P]laintiff does not even generally allege performance of his…remaining obligations under the [contract]. Accordingly, plaintiff's breach of contract claim…is dismissed for failure to state a claim."); *Global Intellicom, Inc. v. Thomson Kernaghan & Co.*, No. 99 Civ. 342(DLC), 1999 WL 544708, at *18 (S.D.N.Y. July 27, 1999) (dismissing contract claim because plaintiff failed to allege its own performance or that it was excused from performing because of defendants' breach); *R.H. Damon & Co. v. Softkey Software Prods., Inc.*, 811 F. Supp. 986, 991 (S.D.N.Y. 1993) ("[W]hen pleading a claim for the breach of an express

contract, as in the instant case, the complaint must contain some allegation that the plaintiffs actually performed their obligations under the contract."). "Absent allegations of the claimant's own performance, the claimant has alleged facts showing 'the mere possibility of misconduct,' but not that it is entitled to relief." *Comfort Inn*, 2011 WL 5238658, at *3–4 (quoting *Iqbal*, 556 U.S. at 679). Because the Complaint contains not even a single allegation pertaining to Plaintiff's performance under the supposed contract, the breach of contract claim is fatally flawed and must be dismissed outright.

Moreover, the elements establishing the existence of a contract are offer, acceptance, consideration, mutual assent, and intent to be bound. *Billybey Marina Servs.*, 2016 WL 1266608, at *2. Plaintiff fails to plead *any* of these elements. Instead, Plaintiff baldly asserts that "Plaintiff, TANIA GALARZA, entered into a contract with defendants CLUB and FINANCE on or about January 21, 2019." Compl. ¶ 77. As Plaintiff does not attach a copy of said contract, certainly more is necessary to survive a motion to dismiss than a conclusory allegation that the parties entered into an agreement supposedly guaranteeing that Plaintiff would have straight teeth within five months. *Tray–Wrap, Inc. v. Veneman*, No. 02 Civ. 6898(RCC), 2004 WL 2346619, at *4 (S.D.N.Y. Oct. 18, 2004) ("[C]onclusory allegations cannot establish the existence of a valid contract."). And in truth, the only applicable contract here is the Informed Consent, to which HFD is not a signatory. *See* Exs. 1-2. Thus, Plaintiff has failed to plead a breach of contract claim against HFD.

### C.    Plaintiff Pleads No Facts Evincing Any Wrongdoing by HFD.

Tellingly, Plaintiff does not even explain HFD's role in connection to her treatment. As explained above, HFD is an independent company that processes customer finance options for SDC if customers elect to pay for their clear aligner therapy over time rather than a single upfront payment. Razo Decl. ¶ 3; *see also* https://smiledirectclub.com/pricing/ (last visited May 10, 2022)

(listing HFD as SDC's "financing partner"). The Complaint makes no claims whatsoever regarding Plaintiff's financing or any breach in connection therewith. Plaintiff does not suggest that the terms offered by HFD were unfair or otherwise improper, and it does not allege (and could not allege) that HFD played any role in advertising or "misleading" customers. Compl. ¶¶ 61, 69. The reality is that HFD was not at all involved in Plaintiff's treatment, the provision of clear aligners, or the marketing of "products and services" offered through SDC. Razo Decl. ¶¶ 4-5. HFD's alleged financing of Plaintiff's payment for clear aligners and other services is unrelated to the alleged damages of which Plaintiff complains. Therefore, all of Plaintiff's claims against HFD necessarily fail and should be dismissed with prejudice, as no amount of repleading will correct this deficiency.

## VI.    THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY.

The last factor in determining a motion to compel arbitration is whether the matter should be stayed or dismissed outright, and the district court has discretion to make that determination. *Guida v. Home Sav. of Am., Inc.*, 793 F. Supp. 2d 611, 620 (E.D.N.Y.2011). Although the FAA contemplates a stay, "when all of the issues raised in a complaint are subject to arbitration, dismissal is appropriate." *Sollinger*, 2020 WL 774135, at *4 (citation omitted) (dismissing action when all claims were arbitrable); *c.f. Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) ("[T]he FAA mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration *and a stay [is] requested*.") (emphasis added). Here, all claims are arbitrable (or alternatively may be dismissed as to HFD), and as Defendants do not request a stay, this action should be dismissed in its entirety and Plaintiff should be compelled to arbitrate this dispute.

## CONCLUSION

Plaintiff and Defendants are parties to a mandatory, binding arbitration agreement that should be enforced, and Plaintiff must be compelled to arbitrate her claims against Defendants. Further, Plaintiff has failed to articulate any cause of action against HFD, and should the Court

disagree that Plaintiff is compelled to arbitrate against HFD, HFD should be dismissed from this action. In light of the foregoing, Defendants respectfully request the Court dismiss this action in its entirety, rather than stay pending arbitration.

Dated: May 11, 2022
      New York, New York

Respectfully submitted by,

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

*/s/ Edward C. Wipper*
Edward C. Wipper (EW 6140)
17 State Street, Suite 4000
New York, New York 10004
T: (646) 593-7051
F: (646) 798-8902
E: ewipper@beneschlaw.com

Deana S. Stein (DS5047)
200 Public Square, Suite 2300
Cleveland, Ohio 44114
T: (216) 363-5170
F: (216) 363-4588
E: dstein@beneschlaw.com
*Attorneys for Defendants*